UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Target Corporation,

        Plaintiff,

v.

LCH Pavement Consultants, LLC;
United Paving Company, a division
of Superior Paving Co., Inc.;
American Pavement Solutions Inc.;
Asphalt Maintenance Inc.; Rose
Paving Company; Leslie J. Bailey;
Keith Heutzenroeder; Sabas Trujillo;
Timothy Helstad; James Stinson;
Lois Wade; and Alan Rose,

        Defendants.

Civil No. 12-1912 (JNE/JJK)
ORDER

      Target sued its paving consultant, LCH Pavement Consultants, LLC ("LCH"); three employees of LCH, Leslie Bailey ("Bailey"), Lois Wade ("Wade"), and Keith Heutzenroeder ("Heutzenroeder"); four paving companies, United Paving Company ("United"), American Pavement Solutions Inc. ("American"), Asphalt Maintenance Inc. ("Asphalt"), and Rose Paving Company ("Rose Paving"); and the presidents or CEOs of those four companies, Sabas Trujillo ("Trujillo"), Timothy Helstad ("Helstad"), James Stinson ("Stinson"), and Alan Rose ("Rose"). In its Second Amended Complaint, Target alleged five counts: a civil action for a violation of the Racketeer Influenced and Corrupt Organization Act ("RICO") against all Defendants (Count I); a breach of contract claim against LCH (Count II); a breach of contract claim against United, American, Asphalt, and Rose Paving (Count III); a claim of fraud against all Defendants (Count IV); and a claim for a violation of § 1 of the Sherman Act against all Defendants (Count V). Rose Paving and Rose moved for judgment on the pleadings, and the remaining three Defendant paving companies and their presidents moved to dismiss the RICO, Sherman Act, and fraud

1

claims. Before the hearing, Rose Paving and Rose were dismissed pursuant to a stipulation, so the Court will deny Rose Paving and Rose's motion without addressing it.

## I.     BACKGROUND

Target has numerous stores across the country, and in 2009, Target hired LCH to act as its paving consultant for the majority of its stores. As Target's paving consultant, LCH had the responsibility to manage Target's parking lot repair and maintenance needs, which included identifying the quantity and type of work needed at the various stores, soliciting bids from paving contractors, and overseeing the paving and maintenance work as a construction manager.

In its Second Amended Complaint, Target alleges that LCH and the Defendant paving contractors and their presidents or CEOs—United and Trujillo, American and Helstad, Asphalt and Stinson, and Rose Paving and Rose (hereinafter collectively referred to as "the Defendant paving contractors")—entered into a two-part scheme to defraud Target. The first part of the scheme involved bid rigging. Target alleges that paving projects were allocated among the Defendant paving contractors on a territorial basis, and to ensure that a Defendant paving contractor received projects in its allotted territory, other paving contractors were not invited to submit or discouraged from submitting bids, some paving contractors submitted high bids that were uncompetitive, and other bids were falsely inflated. Target also alleges that no bids were sent directly to Target; rather, LCH intercepted the bids and created a spreadsheet for Target reporting the results of the bidding process, and that spreadsheet was materially false. Target claims that the bid-rigging scheme ended in June 2011, when Target moved to archetype pricing. The second part of the scheme involved nonperformance of work, and this portion of the scheme occurred during the bid-rigging portion and extended past June 2011. For this portion of the scheme, Target alleges that the Defendant paving contractors performed less work than they had

contracted to do but billed Target as if they had completed all the work. Target also asserts that the Defendant paving contractors falsified documents to make it appear that LCH was present on the project sites and acted as a construction manager when in fact LCH was not present. Target claims that it discovered Defendants' scheme and terminated its relationship with Defendants in May 2012.

## II.     ANALYSIS

When ruling on a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a court must accept the facts alleged in the complaint as true and grant all reasonable inferences in favor of the nonmoving party. *Mulvenon v. Greenwood*, 643 F.3d 653, 656 (8th Cir. 2011). Although a complaint is not required to contain detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In connection with the motions, the parties have submitted materials that are outside the pleadings and not necessarily embraced by the Second Amended Complaint. *See Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 982 (8th Cir. 2008) (noting on a motion to dismiss, a court "generally may not consider materials outside the pleadings," but "[i]t may . . . consider some public records, materials that do not contradict the complaint, or materials that are necessarily embraced by the pleadings" (quotation omitted)). The Court declines to convert these

motions to dismiss to motions for summary judgment and consequently will not consider these extra-pleading materials. The Court now turns to the motions to dismiss the RICO, Sherman Act, and fraud claims.

### A. RICO

Target alleges that Defendants violated two provisions of RICO: 18 U.S.C. § 1962(c) and (d). Section 1692(c) of RICO makes it

> unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . .

18 U.S.C. § 1962(c). RICO provides a private right of action for "[a]ny person injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). "RICO does not cover all instances of wrongdoing. Rather, it is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity." *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 353 (8th Cir. 2011) (quotation omitted). A violation of § 1962(c) requires Target to show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Id.* (quotation omitted). "The requirements of § 1962(c) must be established as to each individual defendant." *Craig Outdoor Adver., Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1027 (8th Cir. 2008).[1] The Defendant paving contractors allege insufficiencies with respect to each element.

---

[1] Some Defendants incorrectly assert that all RICO elements must be pleaded with particularity under Federal Rule of Civil Procedure 9(b). But the heightened pleading standard under Rule 9(b) only applies to the racketeering activity element when the alleged racketeering activity is fraud. *See Crest*, 660 F.3d at 353, 358 (noting that plaintiff failed to meet the heightened pleading standards of Rule 9(b) in alleging mail and wire fraud); *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 919 (8th Cir. 2001) (reasoning that the heightened pleading standard under Rule 9(b) applies to RICO cases "because the [racketeering] allegations are allegations of fraud, not because particularized allegations are needed in order to determine

Because the enterprise pleading deficiencies are dispositive of the present motion, the Court turns directly to that element.

An "enterprise" is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). In the Second Amended Complaint, Target alleges an association-in-fact enterprise comprising all Defendants. As explained below, Target fails to sufficiently allege an all-Defendant enterprise, but not for the reason most urged by the Defendant paving contractors. In their papers, the Defendant paving contractors argue that Target describes their actions only in terms of them engaging in predicate acts of racketeering activity—submitting bids and invoices and performing work—and that if those predicate acts are removed, the enterprise structure evaporates. They urge that a RICO association-in-fact enterprise must have a structure that is independent of the predicate acts.

But the Supreme Court made plain in 2009 that for an association-in-fact enterprise, *no* additional structural elements are required beyond the enterprise being "a continuing unit that functions with a common purpose." *Boyle v. United States*, 556 U.S. 938, 948 (2009). The sole common purpose might be commission of the predicate acts: "a group that does nothing but engage in extortion through old-fashioned, unsophisticated, and brutal means may fall squarely within the statute's reach." *Id.* In *Boyle*, the petitioner urged the Court to require that an association-in-fact enterprise have a structure that goes "beyond that inherent in the pattern of racketeering activity in which its members engage." *Id.* at 946 (quotation omitted). *Boyle*'s holding resolved what the Court characterized as the interpretation of the phrase "[b]eyond that inherent in the pattern of racketeering activity." *Id.* at 947. Correctly interpreted, the phrase

---

whether a pattern exists. If the racketeering activity alleged were bribery, for example, Rule 9(b) would not apply").

5

means that "the existence of an enterprise is a separate element that must be proved." *Id.* But an incorrect interpretation of the phrase prohibits evidence of the pattern of racketeering activity to be also used to prove the existence of the enterprise. *Id.* Contrary to what the Defendant paving contractors argue here, "evidence used to prove the pattern of racketeering activity and the evidence establishing an enterprise 'may in particular cases coalesce.'" *Id.* (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)). In fact, the Court stated that it saw "no basis in the language of RICO" for additional structural requirements, such as a structural hierarchy, a chain of command, regular meetings for enterprise affairs, and additional unalleged predicate acts. *Id.* at 948.

The Defendant paving contractors maintain that in the Eighth Circuit, additional structural attributes continue, post-*Boyle*, to be required for association-in-fact enterprises. As support, they cite *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346 (8th Cir. 2011). But that is not the holding of *Crest*. Rather, the Eighth Circuit in *Crest* determined that the plaintiffs' complaint failed "to establish how the Defendants are associated with each other or the RICO enterprise." 660 F.3d at 355. Notably, the complaint in *Crest* is not quoted at length either in the opinion or in the district court's order and is not publicly available because it—but no other part of the file, including a proposed amended complaint—is sealed. It is nevertheless evident from the Eighth Circuit's opinion that the adequacy of the enterprise allegations did not present a close question.[2] The circuit, therefore, was not called upon to parse the rule of *Boyle*. The *Crest* opinion's quotations of pre-*Boyle* cases—*United States v. Lee*, 374 F.3d 637 (8th Cir. 2004) and *Handeen v. Lemaire*, 112 F.3d 1339 (8th Cir. 1997)—are not accompanied by analysis of the effect of

---

[2] To bolster its argument on appeal, the plaintiffs in *Crest* attempted to rely on facts not in the complaint. *Crest*, 660 F.3d at 355. And not only did the plaintiffs fail to properly allege an enterprise, they also failed to properly allege a pattern of racketeering. *Id.* at 358. The *Crest* plaintiffs' RICO claim seems to have had multiple deficiencies.

*Boyle*'s holding. It is not reasonable, in this Court's opinion, to infer from the inclusion of those references a considered decision on the part of the Eighth Circuit to deviate from a rule clearly set out by the Supreme Court.

Although the Defendant paving contractors' enterprise arguments are presented in the *Crest* context, they also are relevant under *Boyle.* In *Boyle*, the Supreme Court addressed what structural features are necessary for an association-in-fact enterprise: "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." 556 U.S. at 945; *see also Crest*, 660 F.3d at 354 (quoting *Boyle*). Although the Eighth Circuit has not addressed the issue, the Third Circuit and several district courts have reasoned that a rimless hub-and-spokes organization does not qualify as an association-in-fact enterprise. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 374 (3d Cir. 2010) (noting that allegations of a rimless hub-and-spokes organization "do not plausibly imply anything more than parallel conduct by the [spokes], [and] they cannot support the inference that the [spokes] 'associated together for a common purpose of engaging in a course of conduct'"); *McDonough v. First Am. Title Ins. Co.*, No. 10-CV-106, 2011 WL 285685, at *5–7 (D.N.H. Jan. 28, 2011) (discussing cases where rimless "hub-and-spoke structures have been held not to qualify as RICO 'enterprises'"); *Conte v. Newsday, Inc.*, 703 F. Supp. 2d 126, 135 (E.D.N.Y. 2010) ("These 'hub and spokes' allegations are insufficient to support a conclusion that the various defendants were associated with one another for a common purpose."); *see Negrete v. Allianz Life Ins. Co. of N. Am.*, Nos. CV 05-6838, 05-8908, 2011 WL 4852314, at *6 (C.D. Cal. Oct. 13, 2011) (holding that allegations that an entity acted as an intermediary for communications among the spokes supplied the "'unifying rim' of relationships" between the spokes); *see also* Gregory P. Joseph, *Civil RICO: A Definitive Guide* 106 (3d ed. 2010) ("[T]he

rimless hub-and-spoke configuration would not satisfy the 'relationships' prong of *Boyle*'s structure structure.").[3] This is because without a "rim," there are no allegations of concerted actions among the spokes, only allegations of parallel conduct. *In re Ins. Brokerage*, 618 F.2d at 374. And an association-in-fact enterprise requires more than parallel conduct; it requires relationships among those associated with the enterprise, and it requires those associated with the enterprise to "function as a unit, that they be 'put together to form a whole.'" *Id.* (quoting *Boyle*, 556 U.S. at 945).

In the Second Amended Complaint, Target alleges an association-in-fact enterprise comprised of all Defendants. As alleged, that association-in-fact enterprise is a hub-and-spokes organization, where the hub is LCH and the spokes are the Defendant paving contractors. Target has alleged sufficient facts to show relationships between the individual Defendant paving contractors and LCH. But the complaint alleges no rim: the Second Amended Complaint contains no nonconclusory factual allegations to support a reasonable inference of relationships among the Defendant paving contractors.

For the bid-rigging portion of the scheme, Target alleges Defendants ensured that the Defendant paving contractors were given a project in their allocated territory by not asking local paving contractors to bid, submitting high bids, and altering bids. But these allegations do not show relationships among the Defendant paving contractors because LCH was the entity that is alleged to have solicited bids, intercepted bids, and provided materially false summary

---

[3] Pre-*Boyle* cases also reasoned that a rimless hub-and-spokes organization did not constitute a RICO enterprise. *See Cedar Swamp Holdings, Inc. v. Zaman*, 487 F. Supp. 2d 444, 451 (S.D.N.Y. 2007) ("[A]n allegation that the perpetrator of a series of independent fraudulent transactions used a different accomplice to aid each transaction is insufficient to justify a conclusion that the perpetrator and the accomplices together constituted an ongoing organization or functioned as a continuing unit."); *In re Pharm. Indus. Average Wholesale Price Litig.*, 263 F. Supp. 2d 172, 183 (D. Mass. 2003) ("Most courts have found that complaints alleging hub-and-spoke enterprises fail to satisfy the RICO enterprise requirement.").

spreadsheets of the bids to Target. Because LCH was the entity that solicited bids and created the summary spreadsheet, two factual allegations to which Target points fail to show relationships among the Defendant paving contractors: the allegation (1) that, with respect to two stores, United was allocated work even though Rose Paving was the low bidder and the bid summary spreadsheet was falsified to make Rose Paving's bid appear higher, and (2) that with respect to three stores, only Asphalt, American, and Rose Paving bid. Moreover, the complaint's allegation that the Defendant paving contractors could trust LCH to allocate work to them at inflated prices and its allegation that in June 2011 "some or all of the Defendants" met in advance of the Target sourcing event (Second Am. Compl. ¶ 13) do not provide the Court with sufficient factual matter to infer relationships among the Defendant paving contractors.

As for the nonperformance of work portion of the scheme, Target alleges that an individual Defendant paving contractor did not perform all the contracted-for work on a project but billed Target as if all the work had been performed, that LCH and its employees knew that the individual Defendant paving contractor had not completed all the work, and that the individual Defendant paving contractors falsified documents to make it appear as if LCH had been present on the job site. Again, these are allegations of parallel conduct—all the individual Defendant paving contractors were not performing their work with the knowledge of LCH and were falsifying documents stating that LCH was on the job site—and do not show relationships among the Defendant paving contractors. Target does allege that the Defendant paving contractors knew that the others were not completely performing their work, but mere knowledge that others are engaged in similar conduct is insufficient to allege concerted conduct as part of an enterprise. *See In re Ins. Brokerage*, 618 F.3d at 374 (holding allegations that a broker (the "hub") entered into similar agreements with several insurers (the "spokes") and that the insurers

knew of the identity of the other insurers and the terms of the agreements did not plausibly imply anything other than parallel conduct that was insufficient to state a claim for a RICO association-in-fact enterprise).

In its Second Amended Complaint, Target identified one large association-in-fact enterprise comprised of all Defendants. But what the complaint, as presently drafted, actually alleges is a series of multiple, smaller enterprises consisting of LCH and an individual Defendant paving contractor: LCH and American, LCH and Asphalt, LCH and United, and LCH and Rose Paving. Because Target has failed to allege relationships among the Defendant paving contractors, the RICO enterprise element is not plausibly alleged, and the § 1962(c) claim cannot stand.

Target also alleges a violation of § 1962(d), which makes it unlawful for a person to conspire to violate § 1962(c). 18 U.S.C. § 1962(d). "To show a RICO conspiracy in violation of § 1962(d), the plaintiff must present evidence beyond that required to establish a right to relief under § 1962(c)," namely, evidence of a "tacit understanding between the parties." *United States v. Kehoe*, 310 F.3d 579, 587 (8th Cir. 2002). Because the complaint does not adequately allege an enterprise under § 1962(c), it also fails to allege a violation of § 1962(d).

Consequently, the Court dismisses Count I of the Second Amended Complaint.

### B. Sherman Act

In Count V of the Second Amended Complaint, Target alleges all Defendants violated §1 of the Sherman Act, 15 U.S.C. § 1. "To demonstrate a violation of section 1 of the Sherman Act, a plaintiff must provide proof of an illegal contract, combination, or conspiracy which results in an unreasonable restraint of trade." *Double D Spotting Serv., Inc. v. Supervalu, Inc.*, 136 F.3d 554, 558 (8th Cir. 1998). Although most antitrust claims are analyzed under the "rule of

10

reason"—where the fact finder determines whether the practice is an unreasonable restraint on competition by inquiring about the market structure and the defendant's market power—"[c]ertain types of restraint are so inherently anticompetitive that they are illegal per se." *Id.* Horizontal restraints of trade are generally illegal per se, and they occur when "combinations of traders at one level of the market structure agree to exclude direct competitors from the same level of the market." *Id.* On the other hand, vertical restraints of trade "result from agreements among combinations of persons at different levels of the market structure," and generally those restraints are not illegal per se unless they include an agreement on price or price levels. *Id.* at 559 (quotation omitted).

Hub-and-spoke conspiracies have "a long history in antitrust jurisprudence." *In re Ins. Brokerage*, 618 F.3d at 327 (quotation omitted). "[T]he critical issue for establishing a *per se* violation with the hub and spoke system is how the spokes are connected to each other"; in other words, there must be a rim—a horizontal agreement—that connects the spokes. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 436 (6th Cir. 2008). For a Sherman Act claim, the Eighth Circuit has not explicitly required or rejected a rim in a hub-and-spokes organization.[4] Other circuits have uniformly held rimless hub-and-spokes conspiracies do not violate section § 1 of the Sherman Act. *See In re Ins. Brokerage*, 618 F.3d at 327 (quoting *Total Benefits*); *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 255 (3d Cir. 2010) (dismissing Sherman Act claim because plaintiffs failed to plead a rim connecting the spokes); *PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, 615 F.3d 412, 420

---

[4] The Eighth Circuit did suggest the theoretical possibility that a rimless hub-and-spoke conspiracy could satisfy § 1 of the Sherman Act in *Impro Products, Inc. v. Herrick*, but even in that case, the court acknowledged that the conspiracy lacked a "overall unlawful plan or common design" because the record showed that the *spokes did not communicate with each other* about the plaintiff until after the plaintiff commenced the lawsuit. 715 F.3d 1267, 1279–80 (8th Cir. 1983) (quotation omitted).

(5th Cir. 2010) (noting that without a "wheel" there is not hub-and-spoke conspiracy under §1 of the Sherman Act ); *Total Benefits*, 552 F.3d at 436 (noting that complaint failed to plead a hub-and-spoke conspiracy because there were insufficient factual allegations about an agreement between the spokes); *Dickson v. Microsoft Corp.*, 309 F.3d 193, 203 (4th Cir. 2002) (noting that a rimless hub-and-spoke conspiracy is insufficient under §1 of the Sherman Act); *PepsiCo., Inc. v. Coca-Cola, Co.*, 315 F.3d 101, 110–11 (2d Cir. 2002) (noting that hub-and-spoke conspiracy theory failed because of lack of evidence of a horizontal agreement).

To state a claim under § 1 of the Sherman Act, a complaint must have "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. "[W]hen allegations of parallel conduct are set out in order to make a § 1 claim, they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." *Id.* at 557.

Target has alleged two per se violations here: an agreement among Defendants to (1) "allocat[e] territories among themselves" and to (2) "fix[] the prices at which repair and maintenance work on Target parking lots was performed." (Second Am. Compl. ¶ 197.) Essentially, Target is alleging that the bid-rigging scheme violated § 1 of the Sherman Act.[5] *See Double D Spotting*, 136 F.3d at 558 (noting that price-fixing and division of markets have been held to be illegal per se); *In re Ins. Brokerage*, 618 F.3d at 336 ("Bid rigging . . . is quintessentially collusive behavior subject to per se condemnation."). Because Target has alleged a hub-and-spokes conspiracy, the critical question becomes whether Target has alleged sufficient factual matter from which the Court could infer a horizontal agreement between the Defendant

---

[5] Although in its papers Target seems to argue that the nonperformance of work portion of the scheme also violated the Sherman Act, the Court cannot glean from the allegations in Count V anything more than an assertion that the bid-rigging scheme violated the Act.

paving contractors in the bid-rigging scheme. Target relies on the same facts the Court found deficient in the RICO claim, and for the same reasons recited above in the RICO claim, the Court concludes that Target has failed to allege sufficient facts from which the Court could infer the existence of a horizontal agreement among the Defendant paving contractors; there are no allegations that the Defendant paving contractors provided sham bids or did anything other than submit bids to LCH when asked by LCH to do so. The allegations all point to vertical agreements between LCH and the individual Defendant paving contractors. Not only are there no explicit allegations of horizontal agreement, but the allegations are not placed in a context that suggests one. *See Integrated Sys. & Power, Inc. v. Honeywell Int'l, Inc.*, 713 F. Supp. 2d 286, 296 (S.D.N.Y. 2010) (holding that the allegation that several distributors complained to Honeywell about another distributor's bidding "is insufficient to suggest plausibly that the distributors *agreed with each other* not to submit competitive bids").[6] Consequently, the Court dismisses Count V of the Second Amended Complaint.

### C. Common-Law Fraud

Some of the Defendant paving contractors argue that Target has failed to state a claim for common-law fraud against them. In Count IV of the Second Amended Complaint, Target alleges several misrepresentations, but only one applies to the Defendant paving contractors: "representations that the Defendant contractors did, in fact, perform all of the work that they

---

[6] Target's claims are even more difficult given the regional nature of the paving business: Target alleges that hot-mix asphalt must be installed at high temperatures and "it is not economical to transport [hot-mix asphalt] over long distances." (Second Am. Compl. ¶ 12b.i.) Other than stating the location of the Defendant paving contractors' principal places of business, Target does not allege the geographic market where the Defendant paving contractors operated or whether their markets overlapped. So it is difficult to discern if the Defendant paving contractors were even in competition with each other. *See In re Iowa Ready-Mix Concrete Antitrust Litig.*, 768 F. Supp. 2d 961, 976 (N.D. Iowa 2011).

contracted to perform."[7] (Second Am. Compl. ¶ 192.) The parties assume that Minnesota law applies. Under Minnesota law, "whether a misrepresentation claim exists in the context of a commercial transaction depends on the facts of the case: 'the presence of a governing commercial contract neither preempts nor eliminates the need for all fraud claims to which the parties' dealings may give rise.'" *Cargill, Inc. v. Ron Burge Trucking, Inc.*, Civ. No. 11-2394, 2013 WL 608520, at *3 (D. Minn. Feb. 19, 2013) (quoting *AKA Distrib. Co. v. Whirlpool Corp.*, 137 F.3d 1083, 1086 (8th Cir. 1998)). "Thus, a misrepresentation that is collateral to the contract may be actionable regardless of the existence of the contract." *Id.*; *see generally Glorvigen v. Cirrus Design Corp.*, 816 N.W.2d 572, 584 (Minn. 2012) ("[A] party is not responsible for damages in tort if the duty breached was merely imposed by contract, and not imposed by law." (quotations omitted)); *Hanks v. Hubbard Broad., Inc.*, 493 N.W.2d 302, 308 (Minn. App. 1992) (noting that a party may recover for misrepresentation and breach of contract when "there is a breach of duty which is distinct from the breach of contract"). Here, the misrepresentation at issue is not collateral to the contract but is the basis for Target's breach-of-contract claim. Consequently, Target's fraud claim as pleaded against the Defendant paving contractors is not cognizable and is dismissed.

---

[7] Target also alleges as a misrepresentation the "representations that LCH would monitor and oversee the work of the Defendant contractors." (Second Am. Compl. ¶ 192.) As pled, Target is not alleging the Defendant paving contractors misrepresented that LCH actually oversaw their work; rather, Target is alleging that LCH made misrepresentations that it would oversee the work. Consequently, this misrepresentation, as alleged, is not attributable to the Defendant paving contractors. The other two misrepresentations Target identifies—the representations about the quantities of work required to repair parking lots and the representations about the bids being procured through a competitive bidding process—are not attributable to the Defendant paving contractors because Target alleged in the Second Amended Complaint that LCH determined the quantity of work that needed to be done and solicited and intercepted bids.

**D. Citizenship of LCH**

In the Second Amended Complaint, Target invoked both diversity and federal question jurisdiction. Because the Court has dismissed both federal claims, Target is now in federal court based on diversity jurisdiction, and Target must allege that the matter in controversy exceeds $75,000 and is between citizens of different states.

Pursuant to its independent obligation to determine whether subject matter jurisdiction exists, *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1193 (2010), the Court observes that Target has not properly alleged LCH's citizenship. "When jurisdiction is based on diversity of citizenship, the pleadings, to establish diversity, must set forth with specificity the citizenship of the parties." *Barclay Square Props. v. Midwest Fed. Sav. & Loan Ass'n of Minneapolis*, 893 F.2d 968, 969 (8th Cir. 1990). As the party invoking diversity jurisdiction, Target bears the burden of establishing the citizenship of all parties. *See Walker v. Norwest Corp.*, 108 F.3d 158, 161 (8th Cir. 1997); *Sheehan v. Gustafson*, 967 F.2d 1214, 1215 (8th Cir. 1992).

In the Second Amended Complaint, Target alleged that LCH "is a Texas limited liability company with its principal place of business in Pearland, Texas." (Second Am. Compl. ¶ 2.) Target also alleged that Bailey was "one of the owners of LCH" and was a resident of Texas. (*Id.*) For purposes of diversity jurisdiction, a limited liability company's citizenship is not determined according to 28 U.S.C. § 1332(c)(1). *GMAC Commercial Credit LLC v. Dillard Dep't Stores, Inc.*, 357 F.3d 827, 828–29 (8th Cir. 2004). Instead, a limited liability company's citizenship is that of its members. *OnePoint Solutions, LLC v. Borchert*, 486 F.3d 342, 346 (8th Cir. 2007); *GMAC Commercial Credit*, 357 F.3d at 829. "When diversity jurisdiction is invoked in a case in which a limited liability company is a party, the court needs to know the citizenship of each member of the company." *Delay v. Rosenthal Collins Grp., LLC*, 585 F.3d 1003, 1005

(6th Cir. 2009). "[B]ecause a member of a limited liability company may itself have multiple members—and thus may itself have multiple citizenships—the federal court needs to know the citizenship of each 'sub-member' as well." *Id*. The Second Amended Complaint does not contain any allegations about the members of LCH, LLC, only that Bailey is an owner.

At oral argument, Target represented that it believed the only members of LCH were citizens of Texas. If counsel for Target submits a written statement to that effect, the Court will be satisfied that diversity is established as to LCH.

### III.   CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. American and Helstad's Motion to Dismiss [Docket No. 139], Asphalt and Stinson's Motion to Dismiss [Docket No. 157], and United and Trujillo's Motion to Dismiss [Docket No. 165] are GRANTED.

2. Count I (RICO claim) and Count V (Sherman Act claim) of the Second Amended Complaint are DISMISSED without prejudice.

3. Count IV (fraud claim) of the Second Amended Complaint is DISMISSED without prejudice against American, Asphalt, United, Helstad, Stinson, and Trujillo.

4. Rose Paving and Rose's Motion for Judgment on the Pleadings [Docket No. 172] is DENIED.

Dated:  June 7, 2013

s/Joan N. Ericksen<br>
JOAN N. ERICKSEN<br>
United States District Judge